WALTER S. WOOD, ADMINISTRATOR, *vs.* THE CONNECTI-
CUT SAVINGS BANK.

Third Judicial District, New Haven, June Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

If a savings-bank, when sued to recover the amount of a deposit, intends
to rely upon the provisions of one or more of its by-laws as a de-
fense, it should plead such provisions, otherwise they are not avail-
able.

A by-law under the head of "organization," provided that neither the
bank nor its officers should be responsible for losses in any case where
a "reasonable discretion" had been exercised. *Held* that it was
apparent from its classification that this rule was intended to apply
to the officers and agents of the bank in the management of its
affairs and not to withdrawals of deposits, a subject which was
specifically treated of elsewhere in the by-laws under another title
or heading.

An appellant cannot complain of the charge merely because it recites a
claim of the adverse party and submits it to the consideration of
the jury, unless all the evidence is made a part of the record and it
appears that there was no foundation for such a claim.

While it is technically incorrect to say that the relation between a
savings-bank and its depositors is that of debtor and creditor, a
charge to that effect is harmless where the controlling question for
the jury to decide was whether the orders upon which the bank
acted in paying out the money were genuine or forged.

Errors should be of a substantial character and prejudicial to the appel-
lant to warrant an appellate court in setting aside the verdict of a
jury or in reversing the judgment.

Before a savings-bank can be said to have waived its right to insist
upon a depositor's compliance with the terms of a statute (Public
Acts of 1907, Chap. 130) enacted for the protection of the bank
with respect to the payment of money upon a lost or destroyed
pass-book, the bank must have had knowledge of the loss or de-
struction of the book. But if it has such knowledge and bases its
refusal to pay a deposit upon the ground that the money had been
previously withdrawn upon valid orders of the depositor, its con-
duct constitutes a waiver of its right, when afterward sued, to insist
upon a presentation of the pass-book and upon compliance by the
depositor with the provisions of the statute.

The burden of proving the genuineness of the orders alleged and relied
upon by the bank as a justification for its payments rests upon it.

Wood *v.* Connecticut Savings Bank.

Evidence of the declarations of a savings-bank depositor, since deceased, respecting the amount of his deposit, is admissible under General Statutes, § 705, in a suit by his administrator to recover the amount of the deposit; but evidence of a statement made by one in the presence of the decedent and in response to his question does not come within the same rule. Its admission, however, even if erroneous, is not harmful where the statement only tends to corroborate the contentions of the appellant.

In reviewing an alleged error in overruling a demurrer, this court is not bound to shut its eyes to the subsequent proceedings and treat the demurrer as though it terminated the pleadings, but may consider any facts found, which, while not specifically alleged, are yet within the issue and tend to fortify and strengthen the case against the criticisms raised by the demurrer.

Argued June 6th—decided July 25th, 1913.

ACTION to recover the amount of a savings-bank deposit, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Wolfe, J.;* verdict and judgment for the plaintiff for $743, and appeal by the defendant. *No error.*

*Burton Mansfield* and *Osborne A. Day*, for the appellant (defendant).

*Edmund Zacher* and *William B. Ely*, for the appellee (plaintiff).

RORABACK, J. The plaintiff introduced evidence tending to prove these facts: The plaintiff's intestate, Christopher G. Wood, was a resident of Branford, Connecticut, where he had resided for many years, and was employed as a skilled mechanic in the factory of the Malleable Iron Fittings Company. He and his wife had two sons, the elder of whom is the plaintiff in the present action.

In June of each year it was the custom of his employer to pay Mr. Wood a considerable sum of money, as a bonus for his work during the preceding year. Such

bonus was generally deposited for him by his wife in one of five savings-banks, as follows: The Connecticut Savings Bank, The New Haven Savings Bank, The National Savings Bank, The Branford Savings Bank, and The People's Savings Bank of Bridgeport. These deposits had been made in the different banks for a considerable length of time. On April 14th, 1910, Mr. Wood had on deposit with the defendant bank the sum of $702.25. Subsequently, on April 21st, May 9th, and June 7th, 1910, the defendant paid the sums of $526, $150, and $25, respectively, to Mrs. Wood, on orders presented to the defendant by her together with the pass-book. There was on deposit in the bank, after the last withdrawal, the sum of $5.66. It is the validity of these three withdrawals which are in question in the present action, the aggregate amount of which the plaintiff seeks to recover.

On March 7th, 1911, Mr. Wood went to the writing-desk to get the pass-books, and found that they were not in their usual place. Acting upon his father's instructions, the son, Walter S. Wood, called the Branford Savings Bank by telephone. This occurred in the presence of Mrs. Wood, who was asked by Mr. Wood what had become of the books. She stated that she did not know where they were. On the following day Mrs. Wood shot and killed her husband and her younger child, and two days later she committed suicide. Christopher G. Wood left no will. The plaintiff was appointed administrator of his father's estate by the Court of Probate for the district of Branford, and it is as such administrator that he has brought the present action. By the death of his father, his younger brother, and his mother, the plaintiff became entitled to his father's estate.

The plaintiff claimed that these payments to Mrs. Wood were unauthorized, and made on forged orders

of Christopher G. Wood, and therefore the bank was liable to repay the same.

The defendant contended that the signatures upon the three orders were made by Christopher G. Wood, and were genuine; or that Wood constituted his wife his agent to present the pass-book to the defendant, and to execute all necessary orders and sign all necessary receipts for the withdrawal of the money.

The court was requested to tell the jury that "Section 6, Article 1, of the by-laws of the bank printed in the pass-book furnished the plaintiff's intestate and presented to the bank by Mrs. Wood when she withdrew money on the three orders, April 21st, May 9th, and June 7th, 1910, respectively, exempts the bank from liability from [for] any payment made by the bank where reasonable discretion has been exercised by the bank." This portion of the by-laws of the bank provides, among other things, that "neither the bank nor its officers shall be responsible for losses in any case where a reasonable discretion has been exercised."

The court below did not err in refusing to charge as requested upon this branch of the case. It was immaterial, for the purposes of this case, whether the defendant bank exercised reasonable discretion in making the payments in question. As we interpret the pleadings, no such issue is raised by the defendant in its answer. If the defendant wished to avail itself of the defense that in the payment of this money it used due care, it should have so pleaded. This was not done. Furthermore, it is apparent from the classification of this rule in the by-laws under the title of organization, that it was not intended to be applicable to withdrawals dealt with specifically under another title. This regulation appears to relate to the conduct of the officers and agents of the bank in the management of its affairs. If it were intended to safeguard the bank in relieving it

from liability from fraud practiced upon it in withdrawing money by means of forged signatures, its language and position in the by-laws were such that it could not be fairly held that the depositors should be presumed to know of its terms. See *Dinini* v. *Mechanics Savings Bank,* 85 Conn. 225, 228, 82 Atl. 580.

It is a further ground of appeal that the court instructed the jury that when the plaintiff demanded the sums of money in question, "he offered to the bank a good and sufficient bond with surety to protect the bank from any loss which it might thereafter meet with in consequence of the payments to him of such sums."

This portion of the charge furnished no ground of complaint to the appellant. It appears that the court, in this connection, was simply stating a claim of the plaintiff, which the record discloses he had offered evidence to prove. As the evidence has not been made a part of the record we cannot determine whether or not there was any foundation for such a claim. It also appears that the language complained of is in substance an allegation of the plaintiff's reply to the answer of the defendant.

In one passage of the charge the court stated to the jury that "the relation between the savings-bank and the depositor is that of a debtor and creditor." This language was technically incorrect. This court has repeatedly held that the relation between a savings-bank and its depositor is not merely one of debtor and creditor. We are not satisfied, however, that this error was of such a substantial character as to require a reversal of the judgment rendered. This court is not inclined to find mere technical errors upon which to reverse judgments. *Foote* v. *Brown,* 81 Conn. 218, 227, 70 Atl. 699. The controlling questions for the jury to decide were whether the bank had paid out money of the plaintiff's intestate to the wrong person, and if so,

was the defendant liable. Under these circumstances it is apparent that the defendant could not have been prejudiced by this statement of the court.

The plaintiff, in reply to the defendant's answer, averred that "when he demanded the payment of said $706.25, together with the interest thereon, he also demanded that the defendant credit to his account as administrator on the estate of said Christopher G. Wood said sum with the interest thereon, and the defendant at that time refused to grant either of said demands but said nothing about the failure of the plaintiff to present said book, nor did it claim that said refusal was based upon the failure to present said book or a duplicate thereof, but refused to pay the plaintiff or to credit said money, and did not request or require the plaintiff to present said book or a duplicate thereof, claiming only that the sum of $706.25 referred to . . . was paid on the written order of Christopher G. Wood, in whose name the deposit was originally entered and who was the original depositor, previous to his death"; and that "the pass-book delivered by the defendant to Christopher G. Wood in his lifetime was surreptitiously taken by the said Mrs. Christopher G. Wood, without the knowledge or consent of the plaintiff's intestate or the plaintiff, from the custody of the plaintiff's intestate, and subsequently destroyed by her without his knowledge during the lifetime of the plaintiff's intestate." These facts, alleged in the plaintiff's reply, were insufficient to go to the jury on the question of waiver, as it failed to allege knowledge by the defendant of the loss or destruction of the pass-book. This defect in the reply was afterward cured by amendment. The record discloses that the plaintiff offered evidence to prove, and claimed to have proved, that the defendant admitted that it did not at any time base its refusal to pay said sums to the plaintiff, or credit the same to him

as administrator upon its books, because of the failure of the plaintiff to present the deposit-book or a duplicate thereof, and that it did not require him to produce the book or secure a duplicate thereof in the manner provided by statute. It does not appear that this claim was controverted.

The court, in connection with these admitted facts, stated to the jury that "under such circumstances . . . it was not necessary for the plaintiff before he was entitled to receive the moneys of Christopher G. Wood from the savings-bank, if you should find that he is entitled to recover such sum, to present the pass-book of Christopher G. Wood, for the reason that the conduct of the defendant at the time of the demand upon it and the fact that the book was lost or destroyed, constituted a waiver of the right upon the part of the defendant to require the presentation of the pass-book. And furthermore, under the admitted facts in this case, the book being lost or destroyed, the plaintiff was not required to present the pass-book in order to become entitled to receive these sums of money from the defendant, or to insist that they be credited to him as administrator upon the books of the defendant bank, provided, as I have already said, it appears that he was legally entitled to receive such sums from the defendant. Nor was the plaintiff required, as the issues stand in this case, to proceed under the provisions of the Public Acts of 1907 [Chap. 130, p. 678] to secure a duplicate of the lost pass-book, because the statute is inapplicable to the conditions existing in this case."

There was nothing in this part of the charge of which the defendant could complain. The admitted facts were such as to constitute a waiver of the defendant's right to insist on the presentation of the bank-book, and of a compliance with chapter 130 of the Public Acts of 1907 referred to by the judge in his instructions. It

appears that when the plaintiff made a demand for the payment of the money he was met with an absolute refusal to pay on the merits of his claim by the defendant, which was in possession of a full knowledge of the facts. There was not a word to indicate that the bank's refusal to pay was because the bank-book was not presented, or that the plaintiff had not complied with the provisions of chapter 130 of the Public Acts of 1907. On the contrary, the only reasonable inference to draw from the action of the bank is that it based its refusal to pay on the ground that it had a meritorious defense on which it intended to rely. This constituted a waiver of the technical objections upon which the defendant now relies. *Johnston* v. *Allis,* 71 Conn. 207, 219, 41 Atl. 816.

The answer averred, among other things, that the payments in controversy were made upon the written orders of Christopher G. Wood. In view of the pleadings and the issues presented under them, the defendant cannot complain because the jury were instructed that the burden to establish the fact that these orders were the genuine orders of Christopher G. Wood, or that he authorized them to be drawn, was upon the defendant; especially as the jury were also told that the burden of proof to establish the fact that the payment by the defendant bank was unlawfully made was upon the plaintiff; that the burden was upon the plaintiff to establish the material allegations of his complaint by a preponderance of the evidence, and that the burden was likewise upon the defendant to prove the affirmative allegations of its answer by a preponderance of evidence.

Evidence of the declarations of Christopher G. Wood, the deceased, concerning the sums of money which he had in the various savings-banks was properly admitted under our statute relating to the declarations of deceased persons. General Statutes, § 705. The same

considerations, however, do not justify the admission of a statement made to him by Mrs. Wood, also deceased. The plaintiff, upon his direct examination, having testified to the declarations of his father as to his money in the savings-banks, the loss of the bank-books, and his father's search for them, the following occurred: "Q. Is that all he said? A. And that now his bank-books were gone that he had probably lost it. Q. Where was your mother when he said this? A. She was in the room also. Q. Did he say anything to her about the bank-books? A. He asked her where they were—if she knew where they were. . . . Q. What did she say? A. She said she did not know where they were." Assuming that this was incompetent evidence, yet it is apparent that the appellant could not have been prejudiced by this statement. The defendant contended that no fraud could be imputed to Mrs. Wood in this transaction; that her husband signed the orders upon which the money was drawn, or that they were signed by his wife as his authorized agent. It is manifest, therefore, that the appellant was not injured by this testimony, which only tended to corroborate its defense. As we have already intimated, it is not the duty of appellate courts to set aside the verdict of a jury upon exceptions to the admission of evidence that may be technically improper, when it appears that no injustice was thereby done.

The defendant's demurrer to the plaintiff's reply was overruled. The reply was not questioned because it failed to allege knowledge by the defendant of the loss of the pass-book. Whether the reply would have been sufficient to constitute an excuse for noncompliance with chapter 130 of the Public Acts of 1907, and for a failure to produce the pass-book, it is unnecessary to determine. A reason of appeal like the one relating to the demurrer to the reply should not be decided with-

out reference to the proceedings which follow. "If these, without the imposition of any new and improper burden upon the defendant, result in a judicial finding by which the facts alleged are supported, and their legal effect broadened by other facts not specifically alleged but within the issue, this court is not to shut its eyes to the finding and consider the demurrer as if it had been the termination of the pleadings." With "all the facts before us, we are not required to rule upon what would be the result of some of them standing alone." *Scott* v. *Scott*, 83 Conn. 634, 636, 637, 78 Atl. 314. Errors of law constitute no ground of reversal if they "are immaterial or such as have not injuriously affected the appellant." General Statutes, § 802. Thus treated, it appears that a waiver by the bank was properly found. Under these circumstances, the criticisms of the defendant upon the rulings of the court relating to chapter 130 of the Public Acts of 1907 and the by-law of the bank are of no importance.

There is no error.

In this opinion the other judges concurred.