IN RE JUVENILE APPEAL (DOCKET No. 10718)*

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued May 12—decision released August 31, 1982

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 3161, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

*John C. Kucej,* for the appellant (mother of minor child).

*William Hickey,* for the appellant (defendant minor child).

*Edward Duffy,* for the appellee (intervening plaintiff foster parents).

*Judith M. Earl,* assistant attorney general, with whom were *Carol A. Feinstein,* assistant attorney general, and *Carl R. Ajello,* attorney general, for the appellee (state of Connecticut).

PARSKEY, J. The respondent in this action appeals from a judgment terminating her parental rights pursuant to subsections (2) and (4) of General Statutes § 17-43a (a)[1] with respect to her eight

---

[1] "[General Statutes] Sec. 17-43a. TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. (a) In respect to any child committed to the commissioner of children and youth services in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in the prior commitment proceeding, or an attorney appointed by the superior court on its own motion, or an attorney retained by such child after attaining the age of fourteen may petition the court for the termination of parental rights with reference to such child, including the right to petition the court for the revocation of the commitment of the child. The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition upon finding that over an extended period of time, which, except as hereinafter provided in this subsection, shall not be less than one year: (1) The parents have abandoned the child in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare; or (2) the parents have failed to achieve any such degree of personal rehabilitation as would reasonably encourage the belief that at some future date they could assume a responsible position in their child's life; or (3) the parents, by reason of continuing physical or mental deficiency have, and for such period of time as will be detrimental to the best interest of

year old son. Her claims of error are that (1) the criteria set forth in subsections (1) and (4) of § 17-43a (a) are arbitrary and unreasonable and therefore violate her constitutionally guaranteed rights; (2) there was insufficient evidence to support the termination order; and (3) the intervention of the foster parents as parties denied her a fair hearing. Because our view of the intervention issue is dispositive of this appeal we need not address the remaining issues, including the constitutional claims, and we reserve those issues for another day. During the hearing before the referee the foster parents, over the mother's objection, were permitted to intervene as parties. The question before us is whether such intervention was permissible.

Although foster parents have standing in any proceeding concerning the placement or revocation of commitment of a foster child; General Statutes § 46b-129 (i) ;[2] this standing does not spill over into a proceeding involving termination of parental

the child, will be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; or (5) that both parents, or the sole parent of such child have consented to termination of parental rights with respect to such child. The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

[2] General Statutes Sec. 46b-129 (i) provides: "A foster parent shall have standing for the purposes of this section in superior court in matters concerning the placement or revocation of commitment of a foster child living with such parent. A foster parent shall receive notice of any application to revoke commitment or any hearing on such application."

rights. Thus the only question before us is whether the trial court has discretionary authority to permit the intervention of foster parents in such proceedings pursuant to Practice Book § 1023 (*l*).[3] Our categorical answer to that question is "No."

"It is . . . essential, in considering a petition to terminate parental rights, to sever completely the issues of whether termination is statutorily warranted and whether a proposed adoption is desirable. Although petitions for termination are presumably seldom brought unless prospective adoptive parents are available, there still must be a two-step process to determine, first, the threshold question of whether cause for termination under § 17-43a has been proved. 'The best interests of the child, as such, is not an ingredient of [grounds for termination] and is not involved in this threshold question.' *Matter of Corey L. v. Martin L.*, 45 N.Y.2d 383, 391, 380 N.E.2d 266 (1978) . . . ." *In re Juvenile Appeal (Anonymous) v. Commissioner of Children & Youth Services*, 177 Conn. 648, 673, 420 A.2d 875 (1979). "Only if a ground for termination exists may the suitability and circumstances of adoptive parents, in an appropriate proceeding, be considered." *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 645, 436 A.2d 290 (1980). The intervention of foster parents as parties at the termination stage will permit them to shape the case in such a way as to introduce an impermissible ingredient into the termination proceedings. "Petitions for termination of parental rights are particularly vulnerable to the risk that judges or social workers will be tempted, con-

---

[3] Practice Book § 1023 (*l*) authorizes the court in its discretion to permit participation by an "[e]quitable party at interest" in the interests of justice.

sciously or unconsciously, to compare unfavorably the material advantages of the child's natural parents with those of prospective adoptive parents and therefore to reach a result based on such comparisons rather than on the statutory criteria." *In re Juvenile Appeal (Anonymous)* v. *Commissioner of Children & Youth Services,* 177 Conn. 648, 672–73, 420 A.2d 875 (1979).[4]

There is error, the judgment is set aside and the case is remanded with direction to deny the motion of the foster parents to intervene and thereafter to proceed according to law.

In this opinion SPEZIALE, C. J., PETERS and ARMENTANO, Js., concurred.

SHEA, J. (dissenting). I disagree with the majority's view that the intervention of the foster parents as parties in the parental termination proceeding denied the respondent a fair hearing. I am, therefore, unable to concur that a new trial, at which the foster parents may be present only as witnesses or observers, is necessary.

I have no quarrel with the majority's view that the permissibility of intervention by foster parents in a custodial placement or revocation proceeding; General Statutes § 46b-129(i); does not mandate the same result in a parental termination hearing. I am not convinced, however, that the absence of

---

[4] The fact that we have not addressed the merits of the two grounds for termination does not mean that we regard either ground as factually or legally established. With respect to the failure of rehabilitation ground we reserve such questions as whether a nexus must be shown between the nonrehabilitation and the underlying cause for commitment and whether both the ground for termination and the underlying cause must be established by the constitutional standard of clear and convincing evidence. See *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

a provision in the parental termination statute granting standing to foster parents divests the trial court of its discretion to allow the foster parents to intervene as "equitable parties at interest" pursuant to Practice Book § 1023 (*l*).[1]

This court has recently had an opportunity to articulate the nature of intervention in our practice. See *Horton* v. *Meskill*, 187 Conn. 187, 445 A.2d 579 (1982). We looked to the comparable federal rule; Fed. R. Civ. Proc., rule 24;[2] for guidance.

---

[1] Practice Book § 1023 (*l*) defines an "[e]quitable party at interest" as "[a]ny person whose interest in the matter before the court is not of such a nature and kind as to entitle him to legal service as a prerequisite to the court's jurisdiction over the proceeding but whose participation therein, at the discretion of the court, may promote the interests of justice."

[2] Rule 24 of the Federal Rules of Civil Procedure provides: "Rule 24. INTERVENTION

"(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"(b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"(c) PROCEDURE. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of

Id., 192. The majority's emphasis on the pitfalls of blurring the adjudicative and dispositive phases of a termination proceeding militates against the existence of intervention of right, as defined in *Horton* v. *Meskill,* supra, since, like the suburban municipalities in that case, the foster parents may not have an interest sufficiently "direct and immediate" in the outcome. Id., 195. A careful reading of the relevant statutes suggests, however, that once a person, such as a foster parent, has been notified by the court that a petition for termination of parental rights will be heard, he has a right to appear at the hearing. General Statutes §§ 45-61d (b) (3)[3] and 45-61f (a).[4] Certainly court ordered notice to foster parents is within the ambit of General Statutes § 45-61d (b) (3), which provides that the court shall order such notice to be given to "the guardian or any other person whom the court shall deem appropriate." Since the court

the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C., § 2403."

[3] General Statutes § 45-61d (b) (3) provides: "HEARING RE TERMINATION OF PARENTAL RIGHTS, TIME, PLACE, NOTICE. . . . (b) The court shall order notice of the hearing to be given, by registered or certified mail or otherwise, at least ten days before the date for the hearing. Notice shall be given to the following persons as applicable: . . . (3) the guardian or any other person whom the court shall deem appropriate."

[4] "[General Statutes] Sec. 45-61f. CONDUCT OF HEARING. INVESTIGATION AND REPORT. GROUNDS FOR APPOINTMENT OF GUARDIAN OR STATUTORY PARENT. (a) At the hearing held on any petition for the termination of parental rights filed in the court of probate, brought under section 17-43a to the superior court or transferred to the superior court from the court of probate under section 17-43a, section 45-61c or section 45-61d, any party to whom notice was given shall have the right to appear and be heard with respect to the petition."

is vested with discretion to notify the foster parents and, once notified, they "shall have the right to appear and be heard with respect to the petition"; General Statutes § 45-61f (a); it follows that the statutory scheme permits them to intervene. See *Horton* v. *Meskill,* supra, 197; Fed. R. Civ. Proc., rule 24 (b). In *Horton* we listed several factors relevant to a decision on a motion for permissive intervention, including: "the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court." Ibid. "A ruling on a motion for permissive intervention would be erroneous only in the rare case where such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion." Ibid. Although my view is that evaluation of the factors enumerated vindicates the trial court's ruling in this case, I need not explore this avenue further because I am also convinced that even if the trial court erred in granting the motion, its error was harmless.

It is axiomatic that to require reversal, error must be harmful. See General Statutes § 52-265; *Wood* v. *Connecticut Savings Bank,* 87 Conn. 341, 350, 87 A. 983 (1913); *Watson* v. *Watson,* 14 Conn. 188, 191 (1841); *Fitch* v. *Chapman,* 10 Conn. 8, 13 (1833). There is no fact or circumstance in this case which indicates that the respondent was prejudiced by the admission of the foster parents as parties. See *Merwin* v. *Richardson,* 52 Conn. 223, 235 (1884). Unquestionably the foster parents, even had they not been allowed to intervene, would

have been permitted to testify, as the foster mother did, during the adjudicative phase of the termination proceedings. The majority opinion does not question that her testimony was highly relevant to the grounds alleged for termination of parental rights. See subsections (1), (2) and (4) of General Statutes § 17-43a (a). The respondent claims that the testimony of the foster mother was tainted by "self-interest." No objection was made on the basis that she was incompetent to testify, nor would such an objection have been sustained. See General Statutes § 52-145. The majority's fear that "[t]he intervention of foster parents as parties at the termination stage will permit them to shape the case" impermissibly would be a valid concern only if new issues were raised or evidence introduced unrelated to the grounds for termination set forth in the petition. This consideration is not, however, a ground for reversal in a vacuum. The record and the majority opinion are devoid of any indication that these foster parents shaped this litigation, called witnesses, or did anything other than testify and observe the proceedings. The majority has not even suggested how this respondent might have been prejudiced by the intervention of the foster parents. When the record does not disclose that a litigant was harmed in any way by the addition of another as a party, "the error cannot avail him as a ground for a new trial." *Carroll* v. *Weaver,* 65 Conn. 76, 84, 31 A. 489 (1894); see *Porter* v. *Orient Ins. Co.,* 72 Conn. 519, 526, 45 A. 7 (1900); *Hurd* v. *Hotchkiss,* 72 Conn. 472, 479, 45 A. 11 (1900); *Burns* v. *Fredericks,* 37 Conn. 86, 93 (1870).

For the foregoing reasons, I dissent.