[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. NATURE OF PROCEEDINGS
By Petition dated January 28, 1991, Sandra D. and Haans D., Legal Guardians of Tiffany M., whose date of birth was February 11, 1982, seek to terminate the parental rights of Debra M., mother of Tiffany M., pursuant to Sections 45a-715(2) and 45a-717 (f) of the Conn. General Statutes (Rev. 1991).
At a court hearing on April 28, 1988, Tiffany was found by the court, by agreement of Father, (Mother did not appear), to be a neglected child, and he was committed to the care and custody of his maternal aunt, Sandra D. and her husband, Haans D., as his legal guardians, who are the Petitioners in this case. Father had been appointed Legal Guardian of Tiffany by a Rhode Island Court in 1987 because Mother had left him for several days with someone she hardly knew, at a "crack house."
On February 27, 1991, service was confirmed on Mother, and pro-forma denials were entered on her behalf. On June 13, 1991, the case was continued because Mother requested counsel. After trial days on October 31, 1991, January 2, 1992, and February 5, 1992, all parties rested and were given the opportunity to file trial briefs and reply briefs by March 16, 1992. The period of reserved decision began on March 16, 1992.
In this Petition, the Petitioners have alleged three grounds for termination under Section 45a-717: CT Page 5963
 45a-717 (f)(1): The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. 45a-717 (f)(2): the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. 45a-717 (f)(3): there is no ongoing parent-child relationship that ordinarily develops as a result of a parent having met on a continuing day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child.
The Petitioners also alleged that each of these three grounds has existed for not less than one year.
Although this Petition named Father as a respondent, the Petitioners elected not to proceed against him, and orally amended the Petition to withdraw against him on January 2, 1992.
II. LAW AND STANDARD OF PROOF IN TERMINATION OF PARENTAL RIGHTS CASE
The termination of parental rights involves two phases: adjudication and disposition. Practice Book 1049, 1042, 1044. At first the court determines whether one or more statutory grounds have been proven. See e.g. In Re Juvenile Appeal (84-AB), 192 Conn. 254, 262 (1984); In Re Nicolina T., 9 Conn. App. 598, 602 (1987). A finding that statutory grounds exist must be made by proof of facts existing on the date the petition was filed or amended. In Re Luke G., 40 Conn. Sup. 316, 323 (1985). Without such a finding, no inquiry may be made as to the ultimate best interest of the child. In Re Juvenile Appeal (Docket No. 10718), 188 Conn. 259, 262-63 (1982); Accord. In Re Luke G., supra; In Re Shannon S., 41 Conn. Sup. 145, 146 (1989). CT Page 5964
The right of a natural parent to raise his children is constitutionally guaranteed and may be interrupted only for some compelling state purpose and only after the closest judicial scrutiny. Accordingly, the burden of proof in a termination proceeding rests squarely on the petitioner to establish at least one of its claimed statutory grounds by clear and convincing evidence, the highest burden imposed in any civil case. Santosky v. Kramer, 455 U.S. 745, 747-48; In re Juvenile Appeal (84-AB), 192 Conn. 254, 269; In re Juvenile Appeal (84-03), 1 Conn. App. 463; General Statutes17a-112 (b).
III. FACTS
Evidence offered at trial, interpreted in light of the prior court record concerning Tiffany, of which judicial notice is taken, supports the finding of the following facts:
The parents separated in August of 1987, at which time Tiffany remained with his Mother. On December 17, 1987, Father obtained an order from a Rhode Island Family Court, giving him sole custody, and at the same time, a Restraining Order which prevented Mother from seeing Tiffany.
(Summary of Facts with April 12, 1988 Neglect
Petition, and Father's testimony)
On April 12, 1988, the Connecticut Department of Children and Youth Services (DCYS), obtained an Order of Temporary Custody from this court, and on April 28, 1988, Father agreed to an adjudication of neglect as alleged by DCYS in a neglect petition filed by DCYS on April 12, 1988 pursuant to Section 46b-120 of the Conn. General Statutes. At the court hearing on April 28, 1988, after adjudicating Tiffany to be a neglected child, the court vested his care, personal custody and guardianship in his maternal aunt, Sandra D., and her husband, Haans D., under Section 46b-129 (d).
Mother was incarcerated in Rhode Island for Possession of Cocaine with Intent to Sell, and was released in 1988, prior to the Connecticut neglect hearing on April 28, 1988. She said she did not attend this Hearing because her parole conditions didn't permit her to leave Rhode Island.
(Testimony of Mother)
From April of 1988 to April of 1989, Mother visited Tiffany every weekend, at least at first, and throughout that CT Page 5965 year was regular in her visitation. On Easter Sunday in April of 1989, Mother noticed a bruise on Tiffany's neck which he told her Haans D. had caused. The next day Mother reported this to DCYS, and in retaliation for this, Sandra and Haans D. cut off Mother's visitation. Sandra D. told Mother that she would have her arrested if she came to visit, and if she didn't like it, she could go to court. Another reason that they cut off visitation was that Tiffany seemed to them to be in dreamland after visits. Sandra D. also cut off phone calls sometimes when listening in to conversations between Mother and Tiffany).
(Testimony of Sandra and Haans D.)
After Sandra and Haans D. stopped Mother's visitation in April, 1989, Mother called Sandra within a month, asking if she could see Tiffany, and she also left an envelope for him in the mailbox. From April of 1989 until the end of 1990, Mother sent Tiffany about six letters, plus one that Sandra D. shredded, plus one letter that Sandra D. withheld from him. This letter, which is Petitioner's Exhibit #3, expressed a great deal of love and affection for Tiffany, but was critical of Mr. and Mrs. Dorflinger, so Tiffany was not permitted to see it. There was no other contact between Mother and Tiffany up to the date of this Petition.
Sandra D. testified that if it weren't for Mother calling DCYS and blaming Haans for Tiffany's bruised neck, Mother would still be visiting.
On January 9, 1991, Mother filed with this court a handwritten motion for visitation. She did not appear for the hearing on this motion on January 30, 1991, which was two days after the filing of the Termination of Parental Rights Petition.
Mother testified that after she was stopped from visiting Tiffany in April, 1989, she did not go to court to try to obtain custody of Tiffany or visitation because she was working on solving her drinking problem.
Mother did not contact Tiffany other than by letter, after April, 1989, because Sandra D. and Haans D. told her they would call the police if she contacted them. They also told her not to buy Tiffany any clothing. (Testimony of Mother)
Sandra D. and Mother were very close at one time, but by the time this Petition was filed, there was nothing at a left of this relationship. (Testimony of Sandra D.) CT Page 5966
Mr. and Mrs. D. have provided a good home for Tiffany, and he has done quite well there.
Dr. Meier, a psychologist who on May 29, 1991 evaluated Father, Mother and Tiffany individually, and in a parent-child relationship, stated in his report, which is Petitioner's Exhibit 7, as follows:
 (Question): "If the child should not live with the biologic parent at the present time, when might this be possible, what must occur prior to returning to the parent?"
 (Answer): "It is recommended that steps be taken to arrange placement with the father in the near future. . . . . . . . . Visitation with mother should be postponed until the child is established with father. At that time with the consultation of a counselor, supervised visits with mother may occur. This should be done initially within the therapeutic setting since mother's input may be highly upsetting to the child." (Petitioner's Exhibit 7, Page 10)
On Page 8 of this same exhibit, Dr. Meier stated:
"While it is clear he has been influenced by his aunt and uncle with regard to his perception of his mother, evidence of an ongoing parent/child relationship is not present. If this relationship is to be re-established it will require closely supervised contact and a significant amount of time." Dr. Meier also testified that it Tiffany was returned to his Father, this could result in reducing Tiffany's anxiety with his Mother.
Dr. Meier did not see Mother, Father and Tiffany until four months after January 28, 1991, which was the cut-off day for facts which the Court can consider in the adjudicatory phase of this case, which weaken the force of his testimony as it relates to the situation on January 28, 1991. The Court will therefore take that into consideration in determining how much weight to give Dr. Meier's testimony and report.
IV. ADJUDICATION (Based on facts as of January 28, 1989)
A. Abandonment (Section 45a-717 (f)(1))
In order to sustain their Burden of Proof on this CT Page 5967 issue, the Petitioners must prove by clear and convincing evidence that Debra has failed to maintain a reasonable degree of interest or responsibility as to the welfare of Tiffany, for a period of not less than one year as of January 28, 1991.
The Court finds that the evidence in this case is not strong enough to sustain the "clear and convincing" burden of proof required. Debra visited Tiffany faithfully, regularly and appropriately for one whole year, from April 1988 to April 1989, after her sister and her husband became his legal guardians. Mother showed this real interest and concern for him during a period that must have been very difficult for her. She was on probation or parole and was trying to deal with a substance abuse problem; yet, in spite of those difficulties, consistently found time for her son. Then in April 1989, Tiffany told her that Haans D. had bruised his neck, so she, acting in an entirely responsible way, called DCYS, who, as they are required to do, investigated the incident. As a result of this telephone call and for no other reason, Sandra and Haans D., in a high-handed, summary fashion, informed Debra that she could no longer see her son; that if she didn't like it, she could go to court, and that if she tried to visit, they would have her arrested. They made no attempt to talk to her about the situation, no effort at some kind of mediation. Their attitude was overtly that of: You're not going to see your son any more; if you don't like it, that's too bad. In the first month after this happened, Debra called and asked for permission to see Tiffany, and was told no, and she also left an envelope for him in the mailbox. From then until the date of the Petition, she sent him occasional letters. It is true she did not telephone him, but previously Sandra D. had cut off phone calls if Mother and Tiffany's conversation didn't suit her.
The statutory definition of abandonment requires proof of a "failure" on the part of Mother. Her inaction, born of discouragement, did not reach the level of failure.
The Court finds that although Mother could and should have done more than she did, the Petitioners have not clearly and convincingly proved that she failed to maintain a reasonable degree of interest, concern or responsibility as to Tiffany's welfare. Whether what she did or didn't do was "reasonable" or not has to be measured, at least in part, by the barriers not of her own making, placed in her path by Sandra and Haans. By this yardstick, she has not failed, or at least it has not been clearly and convincingly shown that she has. CT Page 5968
The Abandonment ground is dismissed.
B. Acts of Omission/Commission (Section 45a-717 (f)(2)
No evidence has been presented which could afford a basis for finding that Tiffany "has been denied, by reason of an act or acts of parental commission or omission, the care guidance or control necessary for his physical, educational, moral or emotional well-being."
The fact is that Tiffany, who has been in the care of Sandra and Haans D. since April, 1988, has been well-cared for.
This ground is dismissed.
C. No Ongoing Parent-Child Relationship
(Section 45a-717 (f)(3))
It is quite clear in this case, that on the date of the Petition (January 28, 1991), and for at least a year prior to that date, Debra and Tiffany had no ongoing parent-child relationship. How could they have had, inasmuch as from May 1989 to January 1991, they did not see or talk to each other. This fact alone, however, is not grounds to terminate parental rights. The Court must also find, by clear and convincing proof, that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."
After listening to Dr. Meier's testimony, and reviewing his report (Petitioner's Exhibit 7), the Court concludes that Mother should have the opportunity to reestablish the visiting relationship with Tiffany, which was so abruptly snatched away from her in April 1989, after a full year of regular, generally appropriate visiting. If this is done, at least initially under a therapeutic setting, the Court believes that Mother and Tiffany may well establish or re-establish a parent-child relationship without, in the process, doing anything detrimental to Tiffany's best interests. In drawing this conclusion, the Court is mindful that Dr. Meier's report, (Petitioner's Exhibit 7, Page 8), indicates he believes that if a re-establishment of the Mother-Child relationship is to occur, it will take a significant amount of time to be accomplished. However, just because it may take a significant amount of time, does not mean it will be detrimental to Tiffany's best CT Page 5969 interests to utilize this time, especially since it appears very likely that Tiffany will soon be living with his Father, away from his present guardians, who, as Dr. Meier stated, clearly influenced his perception of his mother. If, as Dr. Meier testified, this could result in lessening Tiffany's anxiety with his Mother, and if, as the record in this case reflects, the visitation that did occur from April 1988 to April 1989 was generally appropriate, Mother and Tiffany should have an opportunity to re-establish this relationship.
Further, if Tiffany is going to start living with his Father, whatever bond he has with Sandra and Haans D. will be weakened, if not broken, and therefore the Court feels that if new bonds are going to have to be developed and strengthened, why not have Mother part of this? A denial of this Petition will have no effect on where Tiffany is to live, and the Court finds that allowing Mother further time to reestablish her relationship with Tiffany would not be detrimental to his best interests. If it works out, the whole family will benefit; if it doesn't, legal remedies less draconian than termination of parental rights will remain; for example, denial of visitation to Mother.
The Court finds that the Petitioners have failed to prove, by clear and convincing proof, that to allow further time for the establishment or re-establishment of a parent-child relationship between Mother and Tiffany would be detrimental to Tiffany's best interest.
The third ground is therefore dismissed, and inasmuch as the Petitioners have not proved any of the grounds alleged, the Petition is dismissed.
The Court recommends that Debra M.'s attorney take immediate steps to provide for visitation within the framework of Dr. Meier's suggestions.
Richard A. Walsh, J.