******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE JACCARI J.*
(AC 36608)

IN RE JUSTIN J.
(AC 36609)

Sheldon, Mullins and Foti, Js.

*Argued September 8—officially released October 16, 2014***

(Appeal from Superior Court, judicial district of Fairfield, Juvenile Matters at Bridgeport, B. Kaplan, J.)

*David E. Schneider, Jr.*, for the appellant (respondent maternal grandmother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Susan T. Pearlman*, former assistant attorney general, for the appellee (petitioner).

*Barry A. Charles*, for the appellee (respondent father).

*Opinion*

MULLINS, J. The respondent Carol B., the maternal grandmother of the minor children at issue in this matter (grandmother), appeals from the judgments of the trial court removing her as guardian and custodian of the children, Jaccari J. and Justin J., and ordering that custody and guardianship be vested in the children's father, the respondent Angel J.[1] On appeal, the grandmother claims that, after the court adjudicated the children neglected, it improperly employed a rebuttable presumption in favor of the children's father when determining in whom to vest custody and guardianship of the children, pursuant to General Statutes § 46b-129 (j) (2), and that the use of the rebuttable presumption was harmful. We conclude that the court's use of a rebuttable presumption in favor of the children's father during the dispositional phase of the neglect proceedings was improper. That error notwithstanding, however, we further conclude, on the basis of the trial court's extensive uncontested factual findings and thorough best interest analysis, that the grandmother has failed to demonstrate that she was harmed by the court's use of a rebuttable presumption in this case. Accordingly, we affirm the judgments of the trial court.[2]

On April 25, 2005, the Probate Court awarded custody and guardianship of the children to the grandmother.[3] On June 19, 2013, the petitioner, the Commissioner of Children and Families, filed a neglect petition on behalf of the children. After the trial on the neglect petition, the court found that, while living with the grandmother, the children had "been denied proper care and attention, physically, educationally, emotionally, or morally, and [had] been permitted to live under conditions, circumstances, or associations injurious to their well-being." In its decision, the court noted that the children have several medical and behavioral issues. They need daily medication, and they lack exercise and healthy eating habits.[4] Appointments with doctors, nutritionists, therapists and counselors were made for them but were not attended, and previous therapy and medical providers discharged the children due to missed appointments.

During its analysis of the dispositional phase of the trial, the court engaged in a thorough examination of and comparison between placing the children with the grandmother and placing them with their father.[5] With respect to the grandmother, the court made the following relevant findings. The children had resided with the grandmother since they were infants, but her apartment is small. The grandmother and her brother, who also lives in the small apartment, had smoked in the home despite the presence of the children and an oxygen tank. The grandmother suffers from medical conditions that limit her mobility; she is disabled. Her medical conditions previously have caused her to be hospital-

ized, and have caused her to miss, cancel, reschedule or be unable to schedule medical and counseling appointments for the children. Those conditions also hamper her ability to insure that the children get proper medical care and therapy. She also has no means of transportation. For months prior to trial, she refused to allow the employees of the Department of Children and Families to enter her home, and the trial court stated that it was not sure whether the children were residing there; Jaccari J. reported to a therapist that he and his brother were residing, instead, with their great aunt, who lives in the same apartment building as the grandmother. The grandmother is strict with the children and has struggled with the parenting style recommended by therapists. The grandmother loves the children and has tried to do the best that she can for them.

With respect to the children's father, Angel J., the court found that he has been arrested and jailed previously; his criminal record includes felonies from the 1980s and 1990s. He does work at his father's church and runs errands for his father. His father, a reverend at the church, allows Angel J., in exchange for the work he does, to live rent free in a two-family home owned by the church. The home is large enough for each child to have his own room. Angel J.'s father also gives him money for the care of the children and for food. Angel J. has access to a car, and he transports the children to and from school each day. He also is available to take the children to their various medical and therapy appointments. He always has been a part of the children's lives and attends church with them on Sundays, but has a hard time saying "no" to them and would bring them to McDonald's after school. The court found, however, that Angel J. now understands that the children need to be on a strict diet. Angel J. loves the children.

Significantly, the court found that the children's father could best tailor the food intake of the children and regulate their meals. The children were more open and acted differently when attending therapy sessions with their father. The court also found that the father could better follow the recommendations of the therapists in addressing the behavioral issues of the children at home.

Ultimately, the court concluded that the children had "a long-term continuous relationship with their biological parent, the father. [The grandmother] has been unable to provide for the boys' medical and therapy needs and follow through with the recommendations of the therapists on a consistent basis. Their housing is now in question as to the condition of the apartment, the boys' accommodations in the apartment and whether the boys actually reside in that apartment. The father has his own first floor unit with plenty of room

for the boys. He has transportation to take them to school and to all their medical and therapy appointments. He has the flexibility with his schedule to accommodate their needs. He is their natural parent. There is a presumption that the boys should be with a natural parent. The court knows that presumption is rebuttable but, in light of all the above, there has been insufficient evidence presented to rebut the presumption."

The court went on to find, by a fair preponderance of the evidence, that "it is in the best interest of both [children] that guardianship and custody be transferred to their father, Angel J., and that there be a period of protective supervision for [six] months; that Angel J. sign specific steps to ensure the boys' medical and therapeutic needs are met; that he conform their diet to the recommendations of their doctors and the nutritionist; and that he allow [the grandmother] visitation with the boys."[6] Thereafter, the grandmother filed the present appeal.

The petitioner filed motions for articulation requesting that the court articulate whether it had found, on the basis of the evidence, that the children's father was suitable and worthy to care for each of the children. The grandmother offered no objection to the petitioner's motions, and the court responded by filing an articulation related to each of the children, setting forth the same findings in each articulation:

"The court finds that Angel J., the biological father of [the children] is suitable and worthy. This is based on the record and findings stated in the court's decision, including, but not limited to, the following:

"1. The father has had a loving, active and continuous relationship with [the children] since [they were] young. He was transporting [them] to school every day and to medical and therapy appointments when allowed. He had weekend visitations with [the children].

"2. He has a motor vehicle to take [the children] to [their] medical, therapy and specialist appointments that are necessary to address [their] specialized needs.

"3. The father resides on the first floor of a house that has ample room for [the children]. They each have their own room.

"4. The father has the time necessary to take [the children] to all [their] required appointments.

"5. The father can prepare and supervise [the children's] dietary needs."

On appeal, the grandmother does not contest the court's finding of neglect or any of the extensive findings supporting the court's disposition in this case; she argues only that, after adjudicating the children neglected, the court improperly used a rebuttable presumption in favor of the children's father, and that this was harmful because the result of the proceedings may

have been different had the presumption not been employed.[7] Under the uncontested facts of this case, which the court set forth in specific detail in its memorandum of decision, we conclude that, although the use of the rebuttable presumption was improper, the grandmother has failed to demonstrate that the error was harmful.

Here, the grandmother contends that, although there is no rebuttable presumption found in § 46b-129 (j) (2), which applies in this case, the court improperly used a presumption in favor of the parent when it was determining in whom to vest custody and guardianship of the children. We agree.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *In re Elvin G.*, 310 Conn. 485, 499–500, 78 A.3d 797 (2013).

The parties agree that, after the court adjudicated the children neglected in this case, the decision to transfer custody and guardianship was governed by § 46b-129 (j) (2), which provides: "Upon finding and adjudging that any child or youth is uncared-for, neglected or abused the court may (A) commit such child or youth to the Commissioner of Children and Families, and such commitment shall remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court; (B) vest such child's or youth's legal guardianship in any private or public agency that is permitted by law to care for neglected, uncared-for or abused children or youths or with any other person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage; (C) vest such child's or youth's permanent legal guardianship in any person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage in accordance with the requirements set forth in subdivision (5) of this subsection; or (D) place the child or youth in the custody of the parent or guardian with protective supervision by the Commissioner of Children and Families subject to conditions estab-

lished by the court."

Unlike General Statutes § 46b-56b, which provides that "[i]n any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody," § 46b-129 (j) (2) contains no presumption in favor of a parent. It is clear that § 46b-56b does not apply to this proceeding, and all parties concede this. See also footnotes 6 and 7 of this opinion. The parties also agree that the court's use of the presumption in this case was error, and, on the basis of the plain language of § 46b-129 (j) (2), we agree. We have found no applicable case law that would lead us to a different conclusion. Accordingly, we conclude that the court improperly applied a rebuttable presumption in favor of the father in this case.

Next, the grandmother claims that the use of this presumption by the trial court was harmful because the results of the proceedings may have been different had the court not employed such a presumption. We disagree.

The parties agree that our standard of review requires the grandmother to prove that the court's use of a rebuttable presumption in favor of the father was harmful. See generally *In re Avirex R.*, 151 Conn. App. 820, 833–34, 96 A.3d 662 (2014) (despite court's use of improper subsection of § 46b-129, impropriety was harmless because court properly found that transfer of guardianship was in child's best interest and that guardian was suitable and worthy); *In re Elvin G.*, supra, 310 Conn. 506 (court's failure to provide statutorily mandated steps was harmless because, "even if such steps had been provided, they could not have made a difference in the trial court's finding of the respondent's failure to rehabilitate"). "Errors of law constitute no ground of reversal if they are immaterial or such as have not injuriously affected the appellant." (Internal quotation marks omitted.) *Wood* v. *Connecticut Savings Bank*, 87 Conn. 341, 350, 87 A. 983 (1913). "It is axiomatic that to require reversal, error must be harmful. See General Statutes § 52-265 . . . ." (Citations omitted.) *In re Juvenile Appeal (Docket No. 10718)*, 188 Conn. 259, 266, 449 A.2d 165 (1982) (*Shea, J.*, dissenting).

"Questions of custodial placement generally are resolved by a factbound determination of what is in the best interest of the child . . . as shown by a fair preponderance of the evidence. . . . To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated

that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court . . . . Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) *In re Isaiah J.*, 141 Conn. App. 474, 476, 62 A.3d 635, cert. denied, 308 Conn. 936, 66 A.3d 498 (2013).

In the present case, the court very clearly set forth its reasons for transferring custody and guardianship of the children from the grandmother to the children's father. It is evident from the court's findings that it believed that the grandmother loves these children and that she has provided for them to the best of her ability. Nevertheless, the grandmother has, inter alia, extensive health issues that render her unable to provide for the particular needs of these children, despite her desire to do so.

The court, in turn, found that the children's father has the desire and the means to care for his children and to address their particular medical and behavioral concerns. It further found that it would be in the best interest of the children for custody and guardianship to be transferred to the father, and that he is a suitable and worthy guardian. The grandmother does not contest any of the court's findings, and they are fully supported by the record. Accordingly, although the court improperly stated that there was a rebuttable presumption in favor of the parent, it is clear, based on its best interest analysis, that the presumption played an insignificant role, if any, in the court's reasoned decision; the court made the necessary findings pursuant to § 46b-129 (j) (2) to support its decision to transfer custody and guardianship to Angel J. Accordingly, we affirm that decision.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 16, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

¹ The mother of the children, the respondent Janielle B., has filed a position paper in this court adopting the brief of the grandmother. During the trial, the attorney for the children asked that the children remain with the grandmother. On appeal, however, the attorney for the children and the attorney for the respondent father have filed position papers adopting the brief of

the petitioner, the Commissioner of Children and Families.

[2] We note that the grandmother filed separate appeals in this case from each of the individual judgments. Both judgments arise from the same memorandum of decision and both appeals are based on the same substantive issues, namely, whether the court improperly employed a rebuttable presumption and whether the use of that presumption was harmful. As a result, we will resolve both appeals in the same opinion in the interests of judicial economy.

[3] There is nothing in the record that indicates the circumstances surrounding the Probate Court's award of custody and guardianship to the grandmother.

[4] The court set forth lengthy and significant factual findings in its memorandum of decision with respect to the grandmother's medical condition as well as the medical conditions of the minor children. It serves no useful purpose to repeat all of the court's specific findings as to these issues in this opinion, except to note generally how these issues impacted the court's ultimate findings regarding the best placement for the children.

[5] A careful review of the electronic transcripts in this case also reveals that in March, 2013, the father apparently had filed, in the family court, a petition for custody of the children. The exact status of that petition is not part of our record. It also is not clear whether the trial court had a copy of that petition or whether it considered the filing thereof when rendering the judgments in this case.

[6] The court issued the relevant orders on form JD-JM-65, generally used in neglect proceedings pursuant to § 46b-129 (j), adjudicating the children neglected and ordering that custody and guardianship be vested in the children's father, subject to six months of protective supervision.

At the same time, however, the court also issued two orders on form JD-JM-76, which traditionally applies in revocation of commitment proceedings under General Statutes § 46b-129 (m), ordering the revocation of the custody and guardianship vested in the grandmother, and ordering that custody and guardianship revert to the children's father with six months protective supervision. The propriety, import or relevance of this order has not been raised, briefed or addressed by the parties, nor was a copy of the order made part of the grandmother's appendix.

[7] In its memorandum of decision, the court did not cite to any statute upon which it relied in applying the presumption at issue. We note, however, that the petitioner, in an argument to the trial court, cited General Statutes § 46b-56b in support of the position that the court should transfer custody and guardianship to Angel J.; the grandmother did not object to or argue the inapplicability of that statute. Thus, we presume that the court was referring to § 46b-56b when it stated that there was a rebuttal presumption in favor of the father in this case. Section 46b-56b contains a statutory rebuttable presumption in favor of the parent in custody disputes between a parent and a nonparent. We use this opportunity to reiterate that the applicability of § 46b-56b is restricted to dissolution and custody matters brought under chapter 815j of the General Statutes and is not applicable in cases that do not arise from dissolution of marriage, legal separation or annulment actions. *In re Cameron C.*, 103 Conn. App. 746, 754, 755, 930 A.2d 826 (2007) ("[t]he plain meaning of § 46b-56[b], read within the context of related statutes within chapter 815j, makes clear that this provision is intended to apply only in dissolution of marriage, legal separation and annulment actions"), cert. denied, 285 Conn. 906, 942 A.2d 414 (2008).