IN RE VINCENT D.*
(AC 20273)

Spear, Mihalakos and Peters, Js.

Argued May 29—officially released September 18, 2001

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

*Susanne D. McNamara,* for the appellant (respondent mother).

*Maureen D. Regula,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

PETERS, J. Pursuant to General Statutes (Rev. to 1997) § 17a-112,[1] a hearing on a petition to terminate parental rights has two separate phases, the adjudicatory phase and the dispositional phase. *In re Eden F.,* 250 Conn. 674, 688, 741 A.2d 873 (1999). The principal issue in this appeal is whether the trial court may permit foster parents who are prospective adoptive parents to

---

[1] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

participate, in some fashion, in the dispositional phase of a termination proceeding. Also at issue is what weight a court, in the adjudicatory phase, must give a respondent's significant efforts to achieve rehabilitation. We affirm the judgment of the court in all respects.

## PROCEDURAL HISTORY

On June 22, 1998, the commissioner of children and families (commissioner) filed a petition to terminate the parental rights of the respondents with respect to their minor son, Vincent. After a three day evidentiary hearing, the court granted the petition.

On appeal, the mother claims[2] that the trial court improperly (1) allowed the foster parents to intervene by permitting them to observe the trial and to comment, and (2) found that she had failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (c) (3). We disagree.

## FACTUAL HISTORY

The relevant facts are as follows. Born abroad, the mother came to the United States when she was six years old and attended school in this country until the eleventh grade. Vincent is the mother's third child. In 1984, the mother had given birth to a son.[3] Having married the respondent father in 1989, she gave birth to their daughter in 1991.

The father had a long history of using marijuana and cocaine. Until he introduced the mother to crack cocaine in 1994, she had used only alcohol and marijuana. She became addicted and started using drugs several times a week for the next two years.

---

[2] Although the court granted the commissioner's petition with regard to the respondent father, he has not appealed from that judgment.

[3] The mother did not maintain a relationship with the father of her first son.

On September 1, 1996, the mother gave birth prematurely to Vincent in the bathtub of her home. At the hospital, both Vincent and the mother tested positive for cocaine. The commissioner obtained an order for temporary custody of all three of the mother's children. On October 28, 1996, Vincent was adjudicated neglected and committed to the care and custody of the department of children and families (department) for one year.

At the time of the neglect adjudication, the court, pursuant to General Statutes § 46b-129 (b),[4] imposed certain expectations on the parents to facilitate reunification of the child with the family. The court required the parents (1) to participate in individual counseling and drug and alcohol counseling, (2) to secure and maintain housing and income and (3) to refrain from involvement in the criminal justice system. The court also ordered the parents to take other "specific steps," with the department's assistance, to further the goal of reunification by obtaining parents and couples counseling, by successfully completing substance abuse treatment and by submitting to random drug tests.

The department provided assistance to enable the parents to meet the court's expectations. It referred them to drug treatment centers, job training programs, individual and couples counseling, psychological evaluations, parenting classes and a family reunification program.

The mother took commendable and significant steps toward meeting the court's expectations. She complied with all of them except for maintaining adequate housing and income. Taking advantage of various substance

---

[4] General Statutes (Rev. to 1997) § 46b-129 (b) provides in relevant part: "If the court . . . vests in a suitable agency or person the child's or youth's temporary care or custody, the court shall provide to the commissioner and the parent of the child or youth specific steps which the parent may take to facilitate the return of the child or youth to the custody of such parent . . . ."

abuse programs, she has been drug free since November of 1996. She completed an outpatient substance abuse program in 1997, and no further treatment was recommended. At the department's referral, she obtained further substance abuse counseling in 1998. She also participated in Narcotics Anonymous and Alcoholics Anonymous meetings, individual and couples counseling and parenting classes.

The mother has maintained contact with Vincent. From early 1997 to mid-1999, Vincent's sister was placed in the same foster home as Vincent. During that time, the mother frequently telephoned the foster home. Her calls ceased, however, when her daughter left the home. Nonetheless, the mother regularly attended visitation meetings with Vincent and her other children. Unfortunately, Vincent often was absent from visitation due to the department's transportation problems. With the assistance of a parent aide provided by the department in April of 1999, the mother's parenting skills improved and Vincent became more responsive to her.

The father, however, did not meet the expectations of the court with respect to his drug addiction. Although he successfully completed several substance abuse programs, he continued to test positive for marijuana and cocaine. He missed numerous appointments for drug tests. He did, however, attend relapse prevention sessions, parenting classes and couples counseling.

With regard to housing and income, issues that the court described as "critical," the prospects for progress were unclear. Contrary to the advice of the department, the parents lived together[5] until they lost their home in

---

[5] Throughout Vincent's commitment, the department advised the mother that, to get her children back, she should not live with the father until he was drug free. The mother indicated that she understood this advice and, if forced to choose between her husband and her children, she would choose her children.

September of 1997 for failure to make mortgage payments. After failure of interim efforts to obtain separate accommodations,[6] the parents again shared housing from June, 1998, to August, 1999. It was not until one month before the termination hearing that the mother moved out and took steps to obtain a divorce.[7]

The mother's financial ability to care for Vincent was equally uncertain. The mother had no consistent source of income until she secured a part-time job about six months prior to the termination hearing. The father apparently remained employed in the moving business, but he did not provide the department with documentation of such employment.

From the time of Vincent's initial removal from his parents' home, he has lived with the same foster parents, who now wish to adopt him. Born prematurely with cocaine in his system, he was ill and developmentally delayed during the first year of his life. Living in the foster home, Vincent has developed well and has become healthy. He has become part of the foster family, enjoying a positive relationship with the family's two biological daughters, his foster grandmother and his foster grandfather.

### INTERVENTION

The first issue on appeal is whether the court properly granted the foster parents' motion to participate in the termination proceeding on a limited basis. Prior to the commencement of the termination hearing, on September 15, 1999, Vincent's foster parents filed a motion to intervene. At the hearing, after oral argument on the

---

[6] After the loss of the family home, the mother moved in with her own mother in an elderly housing complex that did not allow residence by children. The father initially moved in with his sister and subsequently lived in several different places.

[7] The mother found housing with a friend, but on September 13, 1999, judgment of strict foreclosure entered against the owner of that property.

motion, the court granted the foster parents permission to observe and to comment through counsel on disposition, only. The court stated expressly that standing to comment "is not the same thing as intervention . . . ." To protect the rights of Vincent's parents, the court's order spelled out limitations on the foster parents' participation in the termination hearing. The court precluded counsel for the foster parents from questioning any of the witnesses. The court sequestered the foster mother from the courtroom until after the conclusion of her testimony. Although the court permitted the foster father to be in the courtroom throughout, he was directed not to discuss the proceedings with the foster mother until the completion of her testimony.

In our review of the propriety of the court's order, we must determine whether the order was an abuse of its discretion. *In re Baby Girl B.*, 224 Conn. 263, 277, 618 A.2d 1 (1992); *Horton* v. *Meskill*, 187 Conn. 187, 197, 445 A.2d 579 (1982). In our evaluation of the scope of the court's discretion in a proceeding for termination of parental rights, the key question is whether the court's order permitted participation by foster parents in the adjudicatory or in the dispositional phase of the termination hearing.

## I

The mother claims that the court abused its discretion by permitting the foster parents to exercise improper influence in the adjudicatory phase. We disagree.

A hearing on a termination of parental rights petition consists of two phases, adjudication and disposition. *In re Eden F.*, supra, 250 Conn. 688; *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the court must determine whether the commissioner has proven, by clear and convincing evidence, a proper ground for termination of parental rights. *In re Eden F.*, supra, 688. In the dispositional

phase, once a ground for termination has been proven, the court must determine whether termination is in the best interest of the child. Id., 689.[8]

It is well established that persons interested in the prospective adoption of a child have no right to intervene in the *adjudicatory* stage of a termination proceeding. *In re Baby Girl B.*, supra, 224 Conn. 275; see also *In re Juvenile Appeal (Docket No. 10718)*, 188 Conn. 259, 262, 449 A.2d 165 (1982).[9] The technical reason for their exclusion is that, despite their obvious concern about the outcome of a termination proceeding, they have no personal legal interest at stake and, therefore, are not entitled to intervene. *In re Baby Girl B.*, supra, 275–76. The functional reason for their exclusion is that "[p]etitions for termination of parental rights are particularly vulnerable to the risk that judges or social workers will be tempted, consciously or unconsciously, to compare unfavorably the material advantages of the child's natural parents with those of prospective adoptive parents and therefore to reach a result based on such comparisons rather than on the statutory criteria [that govern the adjudication of parental rights]." *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 672–73, 420 A.2d 875 (1979); see *Smith* v. *Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 834–35, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977).

Although foster or preadoptive parents are barred from intervening in the *adjudicatory* phase of termina-

---

[8] Though the hearing consists of two phases, a bifurcation of the proceeding is not required. *In re Tabitha P.* supra, 39 Conn. App. 360 n.6.

[9] The mother relies on *In re Juvenile Appeal (Docket No. 10718)*, supra, 188 Conn. 259, to suggest that foster parents may not be permitted to intervene at any stage of a termination of parental rights proceeding. It is important to note that that case was decided in 1982, prior to the addition, in 1983, of the dispositional phase to the termination proceeding. See Public Acts 1983, No. 83-478, § 1. Therefore, we consider *In re Juvenile Appeal (Docket No. 10718)* in the context in which it was decided, as applying to termination proceedings that consisted only of adjudication.

tion proceedings, neither our statutes nor our case law bar such intervention in the *dispositional* phase of such proceedings. *In re Baby Girl B.* recognized that once a ground for termination has been shown to exist, "the suitability and circumstances of adoptive parents, in an appropriate proceeding, [may] be considered." (Internal quotation marks omitted.) *In re Baby Girl B.*, supra, 224 Conn. 275. Notably, that court, while upholding the trial court's denial of the preadoptive parents' motion to intervene in the adjudicatory stage, recognized the trial court's ruling that the preadoptive parents could intervene at the dispositional stage. Id., 272 n.8. It would serve no purpose to preclude persons with significant knowledge of and experience with the child from assisting the court's determination of the placement that best protects the best interest of the child.[10]

Without disputing these principles, the mother argues that the court in fact improperly considered, during the adjudicatory phase, statements made by the foster mother about Vincent's health and well-being. Her claim of impropriety is twofold. She contends that the court, immediately prior to the adjudicatory part of its decision, improperly found that Vincent had become part of his foster family.[11] The mother further maintains that the very presence of the foster parents during the adjudicatory phase improperly influenced the court to rule against her in determining whether she successfully had achieved rehabilitation. We are not persuaded.

---

[10] The mother cites General Statutes § 46b-122 to support the contention that foster parents should be excluded from termination of parental rights proceedings. General Statutes § 46b-122 provides in relevant part, however, that "[a]ny judge hearing a juvenile matter shall, during such hearing, exclude from the room . . . any person whose presence is, *in the court's opinion,* not necessary . . . ." Because the statute uses discretionary language, it cannot be construed to preclude the limited foster parent participation that the court deemed to be appropriate under the circumstances of this case.

[11] In her testimony, the foster mother opined that Vincent "would be devastated if he were permanently removed from [the foster parents'] home."

Both of these claims founder on the fact that they lack support in the record. First, the court was not asked to rule on the propriety of the foster mother's testimony or to articulate the use that the court had made of it. Even now, the mother does not argue that the foster mother should not have been permitted to appear as a witness for the commissioner. Second, the court was not asked to comment on the effect on its deliberations of the limited role played by the foster parents. Even if the mother's claim were recast into a claim of prejudice, it would still fail because she has offered no evidentiary basis for a finding of prejudice.[12]

To the contrary, all the evidence of record indicates that the foster parents' limited participation in the termination proceeding occurred in the dispositional phase. The foster parents' motion to intervene was interpreted by their own counsel as manifesting only a desire to be heard with regard to the disposition of Vincent's future status. The court expressly acknowledged that it had no authority to permit any form of intervention in the adjudicatory phase. Finally, in granting the foster parents' motion in part, the court expressly limited its order to permit the foster parents to "observe and have standing to comment on *disposition.*" (Emphasis added.) Other than the foster mother's testimony as a witness, the foster parents did not participate in the termination proceedings except for their comments with respect to disposition made toward the end of the trial.

## II

In addition to her argument that the foster parents cast an impermissible shadow on the adjudicatory phase of the termination proceedings, the mother also argues that their participation violated applicable pro-

---

[12] The mother has not cited any rule of law that creates a presumption of prejudice under the circumstances of this case.

cedural norms. We agree with the mother that punctilious adherence to procedural guidelines is an important predicate of a termination of her parental rights. See *Anonymous* v. *Norton*, 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). We disagree that the record discloses any such procedural irregularity.

The substance of the mother's argument in support of a demonstrated failure to adhere to applicable procedural guidelines is addressed to claims of impropriety that we already have rejected in part I of this opinion. Furthermore, the mother does not explain why her claims of procedural irregularity should be reviewed on appeal when they were not raised at trial. Presumptively, our law is to the contrary. See Practice Book § 60-5; see, e.g., *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 540, 757 A.2d 1103 (2000); *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 451–52, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001).

We are persuaded that the court did not abuse its discretion in permitting foster parents to participate, to a limited degree, in the dispositional phase of proceedings to terminate the parental rights of the mother. The court's carefully nuanced response to the foster parents' motion to intervene demonstrates that the court took all relevant considerations into account and acted accordingly.

## PERSONAL REHABILITATION

The second issue on appeal is whether the court properly found that the commissioner had proved, by clear and convincing evidence, that the mother's parental rights should be terminated because of her failure to achieve rehabilitation as required by § 17a-112 (c) (3) (B). The mother claims that the evidence of record does not support such a finding. We disagree.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record." (Internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 705. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 705–706; see also *In re Roshawn R.*, 51 Conn. App. 44, 51, 720 A.2d 1112 (1998).

Pursuant to § 17a-112 (c) (3) (B), the failure of a parent to achieve sufficient personal rehabilitation is one of six grounds for termination of parental rights. This ground has been established if the parent of a child, after a judicial finding of neglect, fails to achieve a degree of rehabilitation sufficient to encourage the belief that at some future date within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child. *In re Eden F.*, supra, 250 Conn. 706; *In re Sheila J.*, 62 Conn. App. 470, 479–80, 771 A.2d 244 (2001).

The mother argues that the court improperly based its decision, in part, on the fact that she continued to live with Vincent's father when he was using drugs. She asserts that their separation was neither one of the court ordered expectations, nor one of the specific steps imposed on her by the department. The mother suggests that the court may consider only her compliance with expectations expressly ordered by the court or imposed by the department. She further argues that successful fulfillment of such expectations is dispositive proof of personal rehabilitation. We are not persuaded.

In determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department. See *In re Michael M.*, 29 Conn. App. 112, 125, 614 A.2d 832 (1992); see also *In re Migdalia M.*, 6 Conn. App. 194, 206, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Accordingly, successful completion of expressly articulated expectations is not sufficient to defeat a department claim that the parent has not achieved sufficient rehabilitation. In the mother's case, her drug use was the primary factor that led to Vincent's initial commitment to the department. It was, therefore, not improper for the court, in assessing the mother's rehabilitation, to consider her failure to reside in a drug free environment, despite her success in overcoming her own drug habit.

We would be more sympathetic to the mother's plight if the department had given her ambiguous instructions about what she had to do to regain custody of Vincent. The court, however, found to the contrary. Specifically, it found that, during the commitment period, the mother had received explicit advice from the department, which she understood, that regaining custody of her child depended on her living apart from Vincent's father until he was drug free.

Despite the assistance offered by the department, the mother lived with the father, who continued to be a drug user, for protracted periods of time, from October of 1996 to September of 1997, and again from June of 1998 to August of 1999. Coupled with the fact that the mother's drug use had caused Vincent's drug addiction, this evidence supported the court's finding that the mother had not succeeded in achieving rehabilitation.

The mother further argues that the court improperly found that she had failed to demonstrate that she maintained access to adequate housing and to a consistent income stream. The court's finding in this respect properly was based on its review of the entire period of Vincent's commitment to the department, not merely the mother's situation at the time of trial.

With respect to the mother's housing arrangements, the court criticized her recurrent failure to separate from the father, which continued until one month before the termination hearing. Her subsequent housing with a friend had uncertain prospects because, at the time of trial, a judgment of strict foreclosure had entered against that property.

The court further determined that the mother's employment record showed that her employment had not been steady. Although she had been employed for much of the commitment period, she had held a regular part-time position for only six months.

The mother argues that these findings either are clearly erroneous or should be set aside by a plain error review. Although the court might have drawn different inferences from the facts of the mother's economic situation, it was not required to do so. Indeed, the court acknowledged that its decision in the mother's case was a much closer call than its decision in the father's case. The court cannot be faulted for accepting the commissioner's argument that the mother had not achieved sufficient rehabilitation until she found stable housing and established an adequate income record that was demonstrably reliable for the future.

Our review of the court's detailed memorandum of decision persuades us that the court properly found that the commissioner had met the heavy burden of establishing that, because of the mother's failure to achieve rehabilitation in a timely manner, her parental

rights should be terminated. The court noted that, despite this termination, the foster parents "have pledged to have Vincent maintain contact with his biological family." See *Michaud* v. *Wawruck,* 209 Conn. 407, 415, 551 A.2d 738 (1988). In sum, the court's decision to terminate the mother's parental rights was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.