******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE ANDREW C.*
(AC 47268)
(AC 47368)

Alvord, Cradle and Westbrook, Js.

*Syllabus*

The intervening foster parents and the minor child separately appealed from the judgment of the trial court granting the motion of the respondent father to open and vacate the court's judgment granting the foster parents' motion to transfer guardianship of the minor child to themselves. They claimed, inter alia, that the trial court erred in retroactively applying *In re Ryan C.* (220 Conn. App. 507), in which this court explained that the right of a foster parent to intervene in neglect proceedings is limited by statute (§ 46b-129 (p)) to the right to be heard, to its determination that the foster parents did not have the right to intervene. *Held*:

The trial court properly granted the respondent father's motion to open and vacate the guardianship judgment, as the foster parents' lack of standing to intervene in this action and, thus, the court's lack of subject matter jurisdiction to adjudicate their motion to transfer guardianship of the minor child, was so entirely obvious that the court's judgment granting the motion to transfer guardianship was void ab initio.

Argued September 4—officially released November 4, 2024**

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the court, *Hon. Barbara M. Quinn*, judge trial referee, rendered judgment adjudicating the minor child neglected and committing the minor child to the custody of the petitioner; thereafter, the court, *C. Taylor, J.*, granted the motion filed by the foster parents of the minor

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** November 4, 2024, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

child to intervene; subsequently, the court, *C. Taylor, J.*, granted the intervenors' motion to transfer guardianship of the minor child to themselves and denied the respondent father's motion to revoke the commitment; thereafter, the court, *Daniels, J.*, granted the respondent father's motion to open and vacate the judgment granting the intervenors' motion to transfer guardianship, and the minor child and the foster parents filed separate appeals with this court. *Affirmed.*

*Dana M. Hrelic*, with whom was *Stacie L. Provencher*, for the appellants in Docket No. AC 47268 and appellees in Docket No. AC 47368 (intervenors).

*Matthew C. Eagan*, assigned counsel, for the appellant in Docket No. AC 47368 (minor child).

*Evan O'Roark*, assistant solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee in Docket Nos. AC 47268 and AC 47368 (petitioner).

*Benjamin M. Wattenmaker*, for the appellee in Docket Nos. AC 47268 and AC 47368 (respondent father).

*Opinion*

CRADLE, J. These appeals arise from a child protection matter concerning the care and custody of the minor child, Andrew C. Andrew and his intervening foster parents separately appeal, in Docket Nos. AC 47368 and AC 47268[1] respectively, from the judgment

---

[1] The foster parents also filed a writ of error, Docket No. AC 47292, that challenged the same judgment as their appeal and on the same grounds. A "primary distinction between appeals and writs of error" is that "[a] writ of error is the means by which a nonparty may seek review of a final judgment," whereas "[a]n appeal is the means by which a party may seek review of a final judgment." *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 726, 207 A.3d 493 (2019). The foster parents were parties to the underlying action—both the neglect matter and the motion to open. In the neglect matter, the court permitted them to intervene, after which they participated in the trial by prosecuting their motion to transfer guardianship and opposing the respondent father's motion to revoke the commitment of Andrew. Based

of the trial court, granting the motion, filed by the respondent father of Andrew, Chester C. (respondent), to open and vacate the court's judgment, rendered almost two years earlier, granting the foster parents' motion to transfer guardianship of Andrew to themselves.[2] We agree with the trial court that the foster parents did not have standing to intervene in this action and, thus, that the court did not have subject matter jurisdiction to adjudicate their motion to transfer guardianship of Andrew. We therefore affirm the judgment of the trial court.[3]

The following procedural history is relevant to our resolution of these appeals. The respondent and Andrew's mother have three children, Madison, Ryan, and Andrew. Madison and Ryan were living with the respondent mother in 2017 when the petitioner, the Commissioner of Children and Families, obtained

on the foregoing, party status was established for purposes of General Statutes § 52-263. See *In re Leo L.*, 191 Conn. App. 134, 135, 214 A.3d 430 (2019) (entertaining intervenor grandfather's appeal from judgment denying his motion to transfer guardianship). "No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal . . . ." Practice Book § 72-1 (b). Accordingly, "[i]f there is a right to appeal, a writ of error should not be brought . . . ." *Vasquez* v. *Superior Court*, 102 Conn. App. 394, 404, 925 A.2d 1112, cert. denied, 284 Conn. 915, 931 A.2d 935 (2007). Because we have jurisdiction to hear the foster parents' appeal, we have dismissed the writ of error.

[2] Although an order granting a motion to open generally is not an appealable final judgment, the present order is immediately appealable in that it implicates the custody of Andrew and "the important rights surrounding the parent-child relationship." (Internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 404, 773 A.2d 347 (2001).

[3] The guardian ad litem, the Law Offices of Attorney Jason Goddard, is also a party to all three appellate matters. The attorney for the guardian ad litem has not filed a brief, a statement adopting the brief of a party, or a detailed statement that the factual and legal issues on appeal do not implicate the child's interest, as required by Practice Book § 67-13. Because the attorney for Andrew filed an appeal on his behalf, we are informed as to the manner in which the factual and legal issues on appeal implicate the child's interest.

orders of temporary custody and filed petitions alleging that Madison and Ryan had been neglected. As a result, Madison and Ryan were placed with a foster parent. On November 20, 2017, shortly after Andrew was born, the petitioner obtained an order of temporary custody and filed a neglect petition with respect to Andrew, who was placed with different foster parents. On November 30, 2017, all three children were adjudicated neglected and committed to the care of the petitioner.

On February 1, 2019, the petitioner filed a petition to terminate the parental rights of both parents as to Andrew. On August 16, 2019, the petitioner withdrew the termination petition as to the respondent.[4]

On August 14, 2019, the petitioner filed a motion to review a permanency plan providing for reunification of Andrew with the respondent. On December 4, 2019, the respondent filed a motion to revoke the commitment of Andrew and for the return of custody and guardianship of Andrew to him.

On December 30, 2019, Andrew's foster parents filed a motion to intervene in the proceedings pursuant to Practice Book § 35a-4.[5] In their motion, the foster parents alleged, inter alia, that they "have a direct and

---

[4] The respondent mother's parental rights were terminated with respect to all three children on November 13, 2019, which was affirmed on appeal. *In re Madison C.*, 201 Conn. App. 184, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020). She has not participated in this appeal.

[5] Practice Book § 35a-4 provides in relevant part: "(c) Other persons unrelated to the child or youth by blood or marriage, or persons related to the child or youth by blood or marriage who are not seeking to serve as a placement, temporary custodian or guardian of the child may move to intervene in the dispositional phase of the case, and the judicial authority may grant said motion if it determines that such intervention is in the best interest of the child or youth or in the interests of justice.

"(d) In making a determination upon a motion to intervene, the judicial authority may consider: the timeliness of the motion as judged by the circumstances of the case; whether the movant has a direct and immediate interest in the case; whether the movant's interest is not adequately represented by existing parties; whether the intervention may cause delay in the proceedings or other prejudice to the existing parties; the necessity for or value of

immediate interest in this matter. Specifically, [the respondent has never cared for Andrew and that] they have cared for [him] since [his] birth and consider him to be a part of their family. The [foster parents] have an interest in keeping their family intact . . . ." They further alleged that their "interest is not adequately represented by the existing parties to this matter" and that they "have an interest in maintaining their family's integrity."[6] On January 23, 2020, the trial court, *C. Taylor, J.*, granted the foster parents' motion to intervene "[f]or dispositional purposes only," noting that their "[l]evel of participation [was] to be decided by the court" and that the "foster parents will not be allowed to present evidence [regarding the motion to review the permanency plan], but [they] may state [their] position."[7] Also on January 23, 2020, the court approved a permanency plan to revoke Andrew's commitment and reunify him with the respondent.

On July 11, 2020, the petitioner filed another motion to review a permanency plan providing for the reunification of Andrew with the respondent.[8] On July 20, 2020, the foster parents objected to that plan on the ground

the intervention in terms of resolving the controversy before the judicial authority; and the best interests of the child. . . ."

[6] In their motion, the foster parents also alleged that allowing them to intervene would not delay the proceedings, would not prejudice any of the existing parties to this matter and would benefit the court and assist in resolving the controversy. They asserted that "there is no party currently involved in this matter who knows or is more familiar with [Andrew] and his needs, [which] makes [them] uniquely able to inform the court of [Andrew's] health, welfare and best interest . . . ."

[7] There were no written objections filed to the motion to intervene. The memorandum of the January 23, 2020 permanency plan hearing, at which the court considered the motion, however, reflects that the respondent, the petitioner and Andrew's attorney objected to the foster parents' intervention. The memorandum of the hearing does not reflect that the issue of subject matter jurisdiction was raised at that time.

[8] It appears from the record that the initial plan was to reunify Andrew with the respondent on April 24, 2020. That plan seems to have been delayed by the COVID-19 pandemic.

that reunification was not in Andrew's best interest. The foster parents also moved to revoke Andrew's commitment and to transfer guardianship to themselves. On July 27, 2020, the foster parents filed an emergency motion to stay the reunification of Andrew with the respondent. The court granted that motion.

On October 22, 2020, the respondent filed a motion to revoke Andrew's commitment, to which the foster parents objected. Thereafter, the foster parents' motion to transfer guardianship, the motion to review the permanency plan and the respondent's motion to revoke commitment were consolidated for trial.

After several days of trial, which commenced on January 28 and concluded on August 6, 2021, at which the foster mother testified and the foster parents presented numerous exhibits and the testimony of several witnesses, the court, *C. Taylor*, *J.*, filed a written decision on December 2, 2021, in which it denied the respondent's motion to revoke commitment and granted the foster parents' motion to transfer guardianship to them, finding that it was in Andrew's best interest. The respondent did not appeal from that judgment.

Meanwhile, matters pertaining to the respondent's other two children also proceeded. On July 8, 2020, Madison was returned to the respondent's care. On July 28, 2020, which was two days before the petitioner had planned to reunify the respondent and Ryan, his foster mother moved to intervene in the dispositional phase of the neglect petition in order to seek a transfer of guardianship to her. She was granted permission to intervene, and her motion to transfer guardianship to her was granted. The respondent appealed, and, in July, 2023, this court determined that Ryan's foster mother had been improperly allowed to intervene, as it was not authorized by Practice Book § 35a-4 and General Statutes § 46b-129 (p). See *In re Ryan C.*, 220 Conn.

App. 507, 523, 299 A.3d 308, cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023). Specifically, this court concluded that the general language of Practice Book § 35a-4 "cannot be interpreted in a manner that enlarges a foster parent's rights under § 46b-129 (p)." Id., 526. This court determined that the erroneous intervention resulted in the trial court "improperly adjudicat[ing] the motion to transfer guardianship" because it "applied an improper standard and evaluated improper factors . . . ." Id., 532. Consequently, the judgment was reversed, and the case was remanded with direction to deny the foster mother's motion to intervene and dismiss her motion to transfer guardianship and for a new trial on the motions to revoke commitment.[9] Id., 533.

On October 2, 2023, in light of the decision in *In re Ryan C.*, the respondent filed a motion to open and vacate the trial court's December 2, 2021 judgment granting the foster parents' motion to transfer guardianship of Andrew to them. He argued that "foster parents do not have standing to intervene in the dispositional phase of neglect proceedings as a matter of law," and, as a result, the trial court "did not have jurisdiction to consider the foster parents' motion to transfer guardianship" such that the "order granting that motion is void ab initio." The respondent argued that the holding in *In re Ryan C.* applied retroactively here because the issue of the foster parents' standing was jurisdictional, which can be raised at any time. The foster parents objected, claiming that the respondent's motion to open was untimely and that the motion was an improper collateral attack on the judgment transferring guardianship to them. They further argued that *In re Ryan C.* did not apply retroactively to this case because the issue of the guardianship of Andrew was no longer pending. In his reply to the foster parents' objection, the respondent argued, in addition to the arguments

---

[9] We note that Ryan has been reunified with the respondent.

that he previously asserted in support of his motion to open, that the court maintained continuing jurisdiction to open the judgment pursuant to General Statutes § 52-212a.[10]

The court, *Daniels*, *J.*, held a hearing on the motion to open and, on January 3, 2024, issued a memorandum of decision in which it granted the respondent's motion to open, vacated the prior order granting the foster parents' motion to intervene, ordered that the foster parents' motion to intervene be denied, and dismissed their motion to transfer guardianship. The court further ordered that a new trial be held on the respondent's motion to revoke the commitment of Andrew. The court held that the respondent's motion to open was timely because the respondent was challenging the foster parents' standing to intervene, which implicated the court's subject matter jurisdiction and could be raised at any time. The court also agreed with the respondent that it maintained continuing jurisdiction over the matter. The court rejected the foster parents' arguments that the motion to open constituted an impermissible collateral attack on the guardianship judgment and that *In re Ryan C.* did not apply retroactively. On January 8, 2024, the court denied the foster parents' motion to reargue. This appeal followed.

On appeal, the foster parents and Andrew claim, inter alia, that the court improperly granted the motion to open on the ground that the foster parents lacked standing to intervene and that the court lacked subject matter

___

[10] Meanwhile, the foster parents had filed a motion to vacate the court's orders pertaining to the respondent's visitation of Andrew on the ground that the parties were "capable of communicating and scheduling visitation on their own without court supervision." The respondent objected to the foster parents' motion and disagreed with the representations made therein. The respondent also filed a motion to modify the visitation orders seeking increased visitation without the involvement of the foster parents.

jurisdiction to adjudicate their motion to transfer guardianship of Andrew to themselves almost two years earlier. We are not persuaded.[11]

Although we typically review the granting of a motion to open a judgment for an abuse of discretion; see *Wethington* v. *Wethington*, 223 Conn. App. 715, 724, 309 A.3d 356 (2024); our review of a court's decision pertaining to jurisdiction presents a question of law over which our review is plenary. See *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

"[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .

"The issue of standing implicates [the] court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue

---

[11] The foster parents and Andrew also challenge the court's determinations that it had continuing jurisdiction to open and vacate the guardianship judgment and that the motion to open was not an impermissible collateral attack on that judgment. The petitioner similarly challenges the court's determination that it maintained continuing jurisdiction to open the guardianship judgment. Because we agree with the court's determination that the respondent's motion to open was timely in that it raised a challenge to the subject matter jurisdiction of the court that entered the judgment that was the issue of the motion to open, we need not address the additional bases on which the court relied in adjudicating the respondent's motion.

. . . .” (Citations omitted; internal quotation marks omitted.) *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 677–78, 286 A.3d 891 (2022). Generally, “[a]s a matter of law, in the absence of jurisdiction over the parties, a judgment is void ab initio and is subject to both direct and collateral attack.” (Internal quotation marks omitted.) *Schoenhorn* v. *Moss*, 347 Conn. 501, 514, 298 A.3d 236 (2023); see also *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 576, 953 A.2d 868 (2008) (“No principle is more universal than that the judgment of a court without jurisdiction is a nullity. . . . Such a judgment, whenever and wherever declared upon as a source of a right, may always be challenged.” (Internal quotation marks omitted.)).

“[E]ven litigation about subject matter jurisdiction [however] should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal.” (Internal quotation marks omitted.) *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013). “[T]he principle of finality rests on the premise that the proceeding had the sanction of law, expressed in the rules of subject matter jurisdiction. As long as the possibility exists of making error in a determination of the question of subject matter jurisdiction, the principles of finality and validity cannot be perfectly accommodated. . . . If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised. The essential problem is therefore one of selecting which of the two principles is to be given greater emphasis.” 1

Restatement (Second), Judgments § 12, comment a, pp. 116–17 (1982).

Faced with competing principles of the finality of a judgment and the validity of a judgment, our Supreme Court has held that, "[u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs, rather than to a collateral proceeding. . . . [T]o sustain a collateral attack on a judgment, the lack of jurisdiction must be entirely obvious and . . . the alleged deficiency must amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Schoenhorn* v. *Moss*, supra, 347 Conn. 515.

"[W]here the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. . . .

"Litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments." (Citation omitted; internal quotation marks omitted.) *Stones Trail, LLC* v. *Weston*, 174 Conn. App. 715, 736–37, 166 A.3d 832, cert.

denied, 327 Conn. 926, 171 A.3d 60 (2017), and cert. dismissed, 327 Conn. 926, 171 A.3d 59 (2017).

Here, for the reasons that follow, we conclude that the foster parents' lack of standing to intervene in this action, and thus the court's lack of subject matter jurisdiction to adjudicate their motion to transfer guardianship of Andrew to themselves, was entirely obvious so as to render its judgment entirely invalid.

In *In re Ryan C.*, supra, 220 Conn. App. 507, this court explained that "Section 46b-129 (p) and Practice Book § 35a-5 specifically limit the rights of foster parents to participate in neglect proceedings. Section 46b-129 (p) provides: 'A foster parent, prospective adoptive parent or relative caregiver shall receive notice and *have the right to be heard* for the purposes of this section in Superior Court in any proceeding concerning a foster child living with such foster parent, prospective adoptive parent or relative caregiver. A foster parent, prospective adoptive parent or relative caregiver who has cared for a child or youth shall *have the right to be heard and comment on the best interests of such child or youth* in any proceeding under this section which is brought not more than one year after the last day the foster parent, prospective adoptive parent or relative caregiver provided such care.' . . .

"Prior to the legislature's adoption of No. 01-142, § 8, of the 2001 Public Acts (P.A. 01-142), § 46b-129 stated that '[a] foster parent shall have standing for the purposes of this section in Superior Court in matters concerning the placement or revocation of commitment of a foster child living with such parent.' General Statutes (Rev. to 2001) § 46b-129 (o). Significantly, in 2001, 'standing' was replaced with 'the right to be heard . . . .' P.A. 01-142, § 8.

"The language of § 46b-129 (p) is reflected in Practice Book § 35a-5. Practice Book § 35a-5 provides in relevant

part: '(a) Any foster parent, prospective adoptive parent or relative caregiver shall be notified of and have a *right to be heard* in any proceeding held concerning a child or youth living with such foster parent, prospective adoptive parent or relative caregiver . . . .' " (Emphasis in original; footnote omitted.) *In re Ryan C.*, supra, 220 Conn. App. 522–23. "There is no language in § 46b-129 (p) or Practice Book § 35a-5 that authorizes a foster parent to intervene in the dispositional phase of neglect proceedings." Id., 523.

The foster parents and Andrew argue that the trial court improperly retroactively applied *In re Ryan C.*, which was issued in 2023, to the guardianship court's decision in 2021. The foster parents contend that "the lack of jurisdiction was not apparent or obvious until the *In re Ryan C.* decision came out in 2023, more than two years" after the court granted their motion to transfer guardianship. Notably, in so arguing, the foster parents acknowledge that the court's lack of jurisdiction to hear their motion to transfer guardianship became entirely obvious after *In re Ryan C.* was issued in 2023. Their argument is misplaced, however, in that, as the trial court found, *In re Ryan C.* "[did] not establish a new precedent, and it did not decide an issue of first impression," as expressly stated in that case. *In re Ryan C.* was arguably novel only in that it reconciled the inconsistent language of Practice Book § 35a-4, which applies generally to unrelated persons who are not seeking to serve as a placement or guardian for the minor child, with § 46b-129 (p) and Practice Book § 35a-5, which apply specifically to foster parents.

In *In re Ryan C.*, this court noted that its holding was consistent with earlier case law and recounted: "In *In re Baby Girl B.*, [224 Conn. 263, 278, 618 A.2d 1 (1992)], our Supreme Court discussed the importance of restricting preadoptive parents' intervention in child

custody proceedings. In that case, the preadoptive parents argued that the trial court improperly denied their motion to intervene as a matter of right or, alternatively, abused its discretion in denying them permissive intervention in the termination proceedings. Id., 274. Our Supreme Court affirmed the trial court's denial of the preadoptive parents' motion to intervene and held that the preadoptive parents were not entitled to intervene as a matter of right and that the court did not abuse its discretion in denying them permissive intention. Id.

"In holding that the trial court did not abuse its discretion by denying the preadoptive parents' request for permissive intervention, the court in *In re Baby Girl B.* stated: With respect to the intervention of foster parents in termination proceedings, this court has determined that [t]he intervention of foster parents as parties at the termination stage will permit them to shape the case in such a way as to introduce an impermissible ingredient into the termination proceedings. Petitions for termination of parental rights are particularly vulnerable to the risk that judges or social workers will be tempted, consciously or unconsciously, to compare unfavorably the material advantages of the child's natural parents with those of prospective adoptive parents and therefore to reach a result based on such comparisons rather than on the statutory criteria. . . . Similarly, the intervention of the preadoptive parents in the termination proceeding might have led to the introduction of impermissible and prejudicial factors. Moreover, because the termination proceeding was concerned only with the statutory criteria alleged as grounds for terminating the mother's parental rights, the preadoptive parents' intervention would have been of little or no value to the court's decision on whether the grounds for termination had been proved. . . . Id., 278.

"The policy considerations articulated in *In re Baby Girl B.* that weighed against allowing a preadoptive

parent permissive intervention in the adjudicatory phase of a termination of parental rights proceeding are similarly relevant to a foster parent's permissive intervention in the dispositional phase of neglect proceedings. In both the adjudicatory phase of termination proceedings and the dispositional phase of neglect proceedings, the biological parents' rights to their children have not yet been terminated. Therefore, the biological parents' rights must be protected by limiting a foster parent's participation in neglect proceedings to ensure that improper and prejudicial factors are not considered by a court. This is especially important in instances in which the court must determine whether the causes that led to a child's commitment to the petitioner no longer exist and whether the child should be returned to the care and custody of the biological parent.

"We have also recognized a distinction between a foster parent's right to be heard and right to intervene. In *In re Vincent D.*, 65 Conn. App. 658, 664, 783 A.2d 534 (2001), this court upheld the trial court's decision to permit foster parents to participate, in a limited manner, in the dispositional phase of a termination of parental rights proceeding. The trial court, rather than granting the foster parents' motion to intervene, recognized that standing to comment is not the same thing as intervention and permitted the foster parents to observe and . . . comment . . . on disposition. . . . Id., 667. This court upheld the trial court's decision and concluded that the trial court had properly protected the rights of the respondent parents by limiting the foster parents' participation in the proceedings. See id.

"In *In re Joshua S.*, [127 Conn. App. 723, 730, 14 A.3d 1076 (2011)], this court held that a child's foster parents did not have a colorable claim to intervene as a matter of right in the dispositional phase of a neglect proceeding, and, therefore, the foster parents were not parties to the proceeding and were not entitled to appeal the

court's denial of their motion to intervene. In coming to this conclusion, this court stated: [F]oster parents have a right under . . . § 46b-129 [p] to receive notice and be heard in any proceeding concerning their foster child. Although this statute explicitly gives foster parents a right to be heard during a proceeding regarding the foster child, neither this statute, nor any other statute, confers on foster parents a right to intervene in a proceeding related to their foster child. . . . Id." (Footnote omitted; internal quotation marks omitted.) *In re Ryan C.*, supra, 220 Conn. App. 527–29. In *In re Joshua S.*, this court reasoned that "[i]t is well established that [f]oster families do not have the same rights as biological families or adoptive families. . . . It is unquestioned that [b]iological and adoptive families have a liberty interest in the integrity of their family unit which is part of the fourteenth amendment's right to familial privacy. . . . Foster parents, on the other hand, do not enjoy a liberty interest in the integrity of their family unit. . . . Rather, [t]he rights of foster parents are defined and restricted by statute . . . [and] the expectations and entitlements of foster families can be limited by the state. . . . The statutory scheme provides to foster parents a limited and narrow set of rights regarding foster children. Such a limited and narrow set of rights is consistent with the premise that [f]oster parents are entrusted with foster children on a temporary basis only." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *In re Joshua S.*, supra, 127 Conn. App. 729–30; see also *Eason* v. *Welfare Commissioner*, 171 Conn. 630, 635, 370 A.2d 1082 (1976) (foster parent did not have standing to file motion to revoke commitment), cert. denied sub nom. *Eason* v. *Maloney*, 432 U.S. 907, 97 S. Ct. 2953, 53 L. Ed. 2d 1079 (1977).

On the basis of the foregoing case law, and the language of § 46b-129 (p) and Practice Book § 35a-5, it is

entirely obvious that the foster parents did not have standing to intervene in this matter and, consequently, the court lacked subject matter jurisdiction to allow them to do so and to hear their motion to transfer guardianship of Andrew to themselves. Although we are mindful that "[o]ur cases demonstrate that it is extraordinarily rare for a tribunal's jurisdiction to be so plainly lacking that it is entirely obvious"; (internal quotation marks omitted) *Reinke* v. *Sing*, 328 Conn. 376, 387, 179 A.3d 769 (2018); this case is distinguishable from those cases in which the lack of jurisdiction was not entirely obvious. This is not a case in which the authority relied on by the party seeking to raise a jurisdictional issue did not implicate the court's jurisdiction. See *Schoenhorn* v. *Moss*, supra, 347 Conn. 516 (jurisdiction was not lacking due to error in applying rules of practice). It is axiomatic that standing implicates a court's subject matter jurisdiction.

Similarly, this is not a case in which the lack of jurisdiction could not be ascertained from a review of the record. See *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 860–61 (lack of jurisdiction was not entirely obvious where record demonstrated evidentiary issue as to whether plaintiff was partnership or joint venture and thus lacked standing); *In re Shamika F.*, 256 Conn. 383, 394–97, 773 A.2d 347 (2001) (lack of jurisdiction was not entirely obvious where respondent parents resided in New York but children were in Connecticut); *Gibson* v. *Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 311, 260 A.3d 1244 (lack of jurisdiction was not entirely obvious when record was silent as to whether plaintiff had met statutory jurisdictional prerequisites to maintaining foreclosure action on common charge lien), cert. denied, 339 Conn. 911, 261 A.3d 747 (2021). Rather, this case is more akin to the decisions in *Stones Trail, LLC* v. *Weston*, supra, 174 Conn. App. 737–38 (principle of finality of judgments did not

bar trial court from reconsidering ripeness of plaintiff's claims and its jurisdiction over them after acceptance of jury's verdict where new facts developed at trial that were unknown to court when previously considering ripeness issue), and *Daley* v. *Hartford*, 215 Conn. 14, 26–27, 574 A.2d 194 (principles of finality did not foreclose claim that court lacked subject matter jurisdiction where plaintiffs failed to exhaust administrative remedies pursuant to collective bargaining agreement), cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990), in which the lack of jurisdiction was ascertainable from a review of the record. The jurisdictional issue in this case is readily ascertainable from the record in that it arises from the status of the foster parents as intervenors, which is improper as a matter of law.

This also is not a case in which a conflict or uncertainty in the law rendered the court's lack of jurisdiction unclear. See *Sousa* v. *Sousa*, supra, 322 Conn. 777–79 (lack of jurisdiction was not entirely obvious where "Connecticut's case law is in conflict regarding whether the modification of a property distribution postdissolution implicates the court's subject matter jurisdiction or merely its statutory authority" (internal quotation marks omitted)); *Rider* v. *Rider*, 200 Conn. App. 466, 480, 239 A.3d 357 (2020) (purported lack of subject matter jurisdiction was not entirely obvious where no applicable case law or other authority provided guidance on novel issue). To the contrary, as discussed herein, § 46b-129 (p), formerly subsection (o), expressly provides, as it has since 2001, that foster parents do not have party standing in child protection hearings but, rather, have only the right to be heard. The 2001 amendment, where "standing" was changed to "right to be heard," evinced a deliberate choice by the legislature to limit the role of foster parents in child protection proceedings, and our courts have consistently applied that principle.

On the basis of the foregoing, specifically the clear language of § 46b-129 (p) and the cases in which we have applied the language of that statute, we conclude that the court's order granting the foster parents' motions to intervene and to transfer guardianship constituted "a fundamental mistake that [was] so plainly beyond the court's jurisdiction that its entertaining [those motions] was a manifest abuse of authority." (Internal quotation marks omitted.) *Schoenhorn* v. *Moss*, supra, 347 Conn. 515. The foster parents' lack of standing to intervene in this matter and to file a motion to transfer guardianship, and, consequently, the court's lack of subject matter jurisdiction, was so entirely obvious that the court's judgment granting the foster parents' motion to transfer guardianship was void ab initio.[12]

Even if we were to conclude that the lack of jurisdiction was not entirely obvious in this case, there is a strong policy interest in revisiting the transfer of guardianship. "[I]n some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity." *Kim* v. *Magnotta*, 249 Conn. 94, 109, 733 A.2d 809 (1999). "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." (Internal quotation marks omitted.)

---

[12] We note that the petitioner has stated that she takes no position on the issue of whether the trial court lacked subject matter jurisdiction over the foster parents' motion to transfer guardianship of Andrew to themselves. The petitioner explains that "the department knows of no other cases like this one. Courts rarely transfer guardianship to a foster parent. Reunification with the biological parent is the goal in every case. If reunification is not possible, termination of parental rights and adoption is the preferred disposition because it is more permanent than a transfer of guardianship. . . . Transfers of guardianship on a foster parent's own motion—rather than a motion filed by the department or child—are even rarer. So the retroactivity and subject matter jurisdiction questions . . . are unlikely to impact many other cases . . . ."

*Denardo* v. *Bergamo*, 272 Conn. 500, 511, 863 A.2d 686 (2005); see also id. (interests in finality of judgments and child's need for stability cannot trump parent's constitutionally protected right to raise child). The court's error in permitting the foster parents to intervene and the subsequent hearing and granting of their motion to transfer guardianship, which, notably, went beyond the contours of its order in granting intervention, was clear.[13] Although it may seem untimely for the trial court to have revisited the issue of subject matter jurisdiction almost two years after the foster parents' motion for guardianship had been granted, it is, as noted, important to prevent a miscarriage of justice to ensure that the court did, in fact, have jurisdiction over the claims at issue, particularly under these unique circumstances, where it was entirely obvious that the foster parents did not have standing to intervene in this matter.[14] This court explained in *In re Ryan C.*: "In . . . the dispositional phase of neglect proceedings, the biological parents' rights to their children have not yet been terminated. Therefore, the biological parents'

[13] As indicated herein, in granting the foster parents' motion to intervene, the court noted that their "level of participation [was] to be decided by the court" and that the "foster parents will not be allowed to present evidence [regarding the motion to review the permanency plan], but they may state [their] position." The foster parents thereafter filed an objection to the petitioner's plan to reunify Andrew with the respondent and moved to revoke Andrew's commitment and to transfer guardianship to themselves. They also filed an objection to the respondent's motion to revoke commitment. At the consolidated trial of these matters, the foster parents presented evidence in support of their position. Their involvement in this matter went well beyond an opportunity to state their position.

[14] Although the foster parents alleged in their motion to intervene that they had a "direct and immediate interest" in this matter in "keeping their family intact" and "maintaining their family's integrity," we reiterate that it is axiomatic that foster parents have no such legally cognizable interest. We recognize that the foster parents have developed a bond with Andrew and acknowledge the emotional impact separation can have on both the child and the foster parents. We by no means disparage the salutary role of foster parents in general and, presumably, the role of the foster parents in this case. However, we are required to follow and are bound by the law.

rights must be protected by limiting a foster parent's participation in neglect proceedings to ensure that improper and prejudicial factors are not considered by a court. This is especially important in instances in which the court must determine whether the causes that led to a child's commitment to the petitioner no longer exist and whether a child should be returned to the care and custody of the biological parent." *In re Ryan C.*, supra, 220 Conn. App. 528–29. As similarly decided in *In re Ryan C.*, the foster parents' intervention in this matter and, more specifically, their motion to transfer guardianship of Andrew to themselves, likely caused the court to apply an improper standard and evaluate improper factors in its consideration of the motion to transfer guardianship and the respondent's motion to revoke commitment. See id., 532. We therefore conclude that the court properly granted the respondent's motion to open and vacate the guardianship judgment. A new hearing should be held on the respondent's motion to revoke commitment, during which the foster parents should be afforded their statutory right to be heard.

The judgment is affirmed.

In this opinion the other judges concurred.